FILED - USDC -NH
2026 JUN 12 AM10:41

**UNITED STATES DISTRICT COURT FOR**
**DISTRICT NEW HAMPSHIRE**

--------------------------------X

NICHOLAS GERARD VARGA :
9 River Street APT. D37
Newmarket, New Hampshire 03857

Plaintiff, :

against : **COMPLAINT**

UNITED STATES POST OFFICE & :
EMPLOYEES OF THE UNITED STATES
POST OFFICE

**JURY TRIAL DEMANDED**

Defendants. :

--------------------------------X

The Pro Se plaintiff Nicholas Gerard Varga ("Plaintiff") for his Complaint against the defendant, The United States Post Office and the Employees of the United States Post Office ("Defendants"), alleges, on knowledge as to its own actions, and otherwise on information and belief, as follows:

# PRELIMINARY STATEMENT

(1) Plaintiff Nicholas Gerard Varga (Plaintiff) brings this action seeking injunctive relief against the certain employees, and monetary relief from Employees of the United States Post Office and the United States Post Office (Defendants) Defendants' defamation at the workplace, defamation of character at the workplace, harassment at the workplace, communication to a third party, slander, professional negligence, discrimination, character

assassination, hostile work environment, and wrongful termination attempt. Including the felonious act of providing false information in order to obtain a "false stalking order" to use as workplace control and competition. Resulting in Malicious Prosecution and Retaliation. Vexatious Litigation Abuse to cause Constructive Discharge. Negligent Retention.

First and foremost, the United States Post Office has not paid the Plaintiff Nicholas Gerard Varga overtime hours since November 4th of 2024 which is a violation Under the Fair Labor Standards Act. If an employer fails to pay the legally required overtime rate the Plaintiff is typically entitled to recover "**Double Pay**" status.

Moving to Discovery phase after pleading, the accountant's log sheet and the Plaintiff's pay stubs can prove Hundreds of overtime hours unpaid.

The Post Office on accident did not pay the Plaintiff an entire pay period because they are fusing the missed overtime pay with the pay period. The Plaintiff suffered damages of payments and bills during a "no pay status" event.

(2) All of the claims asserted herein arise out of and are based on Defendants' continuous professional negligence at the workplace. Plaintiff entered the Stratham, New Hampshire post office in or around the year of 2018 as an RCA (Regular Carrier Associate) in which the employees of the Stratham, New Hampshire post office have had continuous drama causing each other several different forms and episodes of harassment towards each other, of both current employees and several retired employees that were engaged in ongoing drama and harassment. Including other employees that either left or had to leave to go to a different post office and or were relocated due to the ongoing risks at the Stratham, New Hampshire location.

(3) The Stratham, New Hampshire location has had engagement of back-and-forth drama and types of harassment and several other factors and arguments and that of which the Post Office had removed the previous Post Master due to employee complaints. Which resulted in then, multiple OIC's (Officers in Charge), have had to take the position of OIC to hold the position for the Post Office until a suitable Post Master was directed. The Post Office cannot seem to keep anyone in the position of either OIC or Post Master, leading to a lack thereof and efficiency of leadership and overwatch in order to run the post office efficiently in the office, causing frustration and drama and other types of animosities that lead to on the work place related harassments. There has been more than one day where there is no post master or OIC available for the leadership role in order to watch over the office. Here, the employees began running the Stratham, New Hampshire office with "under the radar schemes" where they engage in using false accusations against other employees, management, OICs and the Post Masters in order to control the workplace.

Many conversations on a day-to-day basis are extraordinarily unprofessional which include conversations such as abuses, different types of threats, arguments, and threats about the employees' customers they deliver to, sexual interactions with male and female customers, husbands who are customers upon the routes that are cheating on their wives with the female employees, outside relationships concerning conversations of boyfriends, girlfriends, husbands, and wives, female employees expressing hatred towards males, female employees expressing hatred towards male employees, male employees expressing hatred towards females, male employees expressing hatred towards and or secret verbal hatred toward female employees, false accusations, as well as some employees engage in secretive sexual relationships with each other outside of the post office. Other conversations include political conversations which is apparently not necessarily aloud in the post office, and other overwhelming amounts of personal life and personal life experiences that arise outside of and inside of the post office.

(4) One employee usually in particular during off of the job hours, phone calls other employees expressing aptitudes of work-related drama and non-work-related drama because of poor management and poor higher management, while usually being intoxicated from alcohol. The Plaintiff of this case has had to have this employee documented at two different police stations regarding this certain employee who continuously picks targets to harass even while being intoxicated. This employee then engaged in Retaliation by using false threat accusations to have the Plaintiff removed from the workplace.

(5) Handfuls of investigations provided by the post office and management have taken place in accordance to the employees, management, and OIC's unrelated to the Plaintiff but although the Plaintiff is then included in their unrelated matter. The Plaintiff has now been accused of an uncertain threatening in which the Plaintiff did not make nor create.

(6) It is also believed that because the Plaintiff began to refuse to help in the production in the delivery of other routes, the other employees began to work together to decide how they wanted the Plaintiff removed. In accordance to the post office, it is believed by the Plaintiff that once you are a career employee that you do not necessarily need to help on other routes even if management cannot find anyone. Which the Plaintiff learned from, by the Union. Where other employees and management have lied to the Plaintiff by expressing that the routes need to get done and therefor someone must or has to help.

More than a hundred times over the course of four years employees engage in different dramatic battles of behaviors that have led to a concerning lack of help in which causes several of the employees to have to help in the production of other routes not assigned to them. Some employees enduring the dramatic battles of behavior have also not only had themselves removed and or walked out on the job, but also have had each other and other employees currently working/employed there, and employees no longer working

at the post office, to be relocated, to have to walk out on the job, refuse to work, and or become removed for periods of time, and or were fired or let go from the post office in which caused the Plaintiff and other employees to have to cover for routes that are not assigned to them. More than one time the Plaintiff was asked to do work not assigned to the Plaintiff and in which if the Plaintiff refused, the refusal was used against the Plaintiff in a simultaneous way of different disciplinary actions and Retaliation.

- Retaliation would commence that a Preliminary Discipline Interview (PDI) be taken where the Plaintiff is either getting blamed for things at the office or simple issues were being used to document the Plaintiff at the workplace. This is terrible because the more PDI's you get at the Post Office the more likely you will be Wrongfully Terminated with a slander of documented excuse the Post Office could use to suffice your removal.

(7) One day the Plaintiff called out sick, and the employees began the discussion of how the Plaintiff cannot do his work properly saying that the Plaintiff was useless, refuses to help, and then where they agreed with each other that they wanted the Plaintiff, working towards secretive ways against the Plaintiff, in having the Plaintiff removed. In which the same particular employee lied and made up that a customer on the Plaintiff's route gave the employee the middle finger as to express the Character Assassination and Defamation of the Plaintiff that the Plaintiff does not deliver to the addressees correctly because the Plaintiff sucks at the job, in the narcistic defeat of the plaintiff. In where there are more examples not specified that add up to a consistent threat to the Plaintiff and his employment and on the job-related activity and security.

More than several times the same employees would leave their own route case to walk over to the Plaintiff's route to touch the mail, hide the mail, and purposely misplace packages so as to default the Plaintiff by making the Plaintiff have to suffer a consequence of disciplinary action or (PDI), as if the Plaintiff lost or misdelivered the packages or mail.

On an ongoing daily to weekly basis the same employees will then go through the entire route case of the Plaintiff in order to conquer the Plaintiff upon the route where the employees try to scapegoat the Plaintiff exaggerating that the Plaintiff cannot perform the work duties correctly.

(8) Most currently, the Plaintiff received an "off of the job threat" in which the Plaintiff reported to police creating a Police Report. The Plaintiff merely spoke about the off of the job threat to the employees. Enduring a series of conversations, the employee/employees began using the situation in an advantage against the Plaintiff, and then had the Plaintiff removed from the Federal Property on false or exaggerated terms placing the Plaintiff on an "emergency leave, without pay status". Using the Post Office's strict no violence policy in a "defamation scandal". The threat that the Plaintiff received was considered a "Protected Element" once a Police Report was created the day before.

In which management accepted to file the Plaintiff to "Emergency Leave with No Pay Status" even though management was not valuable at the time of supposed occurrence. Management was not in the office to comprehend that the Plaintiff should have been placed on "Emergency Leave with No Pay Status" The employee started expressing that the Plaintiff threatened her and all of the other employees and stated that the Plaintiff claimed he was going to blow the post office up. Although the employees' claim was that, that was said more than over two to three months prior to this such current incident, the employee cannot even provide a certain date or time, validity, nor reported such a thing when, if it was said. Using the Protected Element to surround it with "Conclusory Allegations" pertaining a "Failure to State a Claim" with. By the same employee who has been placed on emergency leave with no pay for her own sketchy prior threats and outstanding sketchy behavior. And in which was allowed to come back to work after her own emergency leave with no pay that where she was registered/allowed to come back to work provided by the post office nurse. Here, there is a problem at the workplace and union that pertains to

obvious "Negligent Retention" where these employees have a history documented at the workplace although the workplace does nothing to stop it, and knowingly.

(9) Being placed on emergency leave with no pay by obvious false pretense, the Plaintiff was then made to have to pay for his own therapist in order to attend to the Post Office's Nurse's Letter to validly be passed to come back to work.

In which the Plaintiff was never and not once interviewed by the provided post office nurse. Due to a false claim, and attempts of Character Assassinating the Plaintiff then led the false accusation in which an employee called a different post office to reach a different post master that the Plaintiff did not work with, or did not work with for long enough for that post master working as post master in a different office, could conclude that the Plaintiff would be or could be a cause of threat or concern, which then led to the cause of a "Threat Assessment" in which everyone was interviewed inside of the Stratham, New Hampshire post office except for the Plaintiff who was not interviewed by the "post office threat assessment team not once".

- This is seen as a form of "Professional Negligence".

(10) Upon this, management will concurrently lie, not keeping documented certain events, but then will exacerbate the documentation of the Plaintiff. Management, that apparently "may have been" or "may not have been" supposedly in charge of the Stratham, New Hampshire post office location signed off on the emergency leave with no pay status due to the employees that lied about the certain threat allowing for the defeat and negligence against the Plaintiff. The Plaintiff was given the emergency leave information by the supposed management in which the Plaintiff told management that the threat was not true. But was neglected by management and was given the emergency leave status with no pay anyways, despite the same employee who begins and is involved in continuous

drama and different forms of harassment on an ongoing basis, allowed for the employee to defeat the Plaintiff. From the same employee who has been placed on emergency leave multiple times.

- The problem here is, the Police were questioned and told the employees and management "more than several times" that the Police Report that the Plaintiff made was under control and that the initial threat that the Plaintiff received was an "online scam": But yet although with not only being exemplified by the Police that there was no danger, and that the threat the Plaintiff received from an out of state Aggressor was an "online scam", still concluded to have the Plaintiff illegally removed from the Federal Property while on Federal Duty.
- The employees ignored this, and continued to make allegations at the workplace basically tricking the Union Representative who unfortunately was on post office property the day I was wrongfully removed from the office as everyone knowingly supported the False Stalking Order. Causing the Union a liability for not following a Protocol or asking the Police of the protected element.
- A Postal Employee is given a Scanner that documents where the Postal Employee travels through the analytical software, where someone in the office gave to the Police the documented travel of the Plaintiff.
- I had to provide the Union Rep the actual conversation and information regarding the Protected Element I reported to Police. Although I will say that it may not be the Union Representative's professional fault if specific employees are going to cause a defamation scandal with the information where certain management and people were confused by the allegations being made.

(11) The specific employees and employee, in particular start a lot of drama and different forms of harassment on a weekly to monthly basis, talks, has threatened other employees and has been threatened by other employees, has made complaints, and has had complaints made about her. In which had also started drama with each clerk that works in the office. Upon that, receiving complaints and giving complaints, has then now suffered the Plaintiff in their ongoing dramatic battles and un controlled behavior that have been going on for more than four years in a row which let to multiple workplace harassment investigations. (Which are documented).

- Each employee that engaged in verbal and physical harassments at the workplace are literally documented by the post office and the union that prove more than a course of conduct which also reveals a "Modus Operandi Pattern".
- Modus Operandi Pattern.

(12) Upon noting the clerks, the clerks make mistakes by accident where a hold will be removed but the red hold bar will not be taken down causing the Plaintiff to miss a hold in which could arise a complaint from the customer who may need their mail. But because there is a hold complaint, the Plaintiff will suffer the consequence of disciplinary action and workplace defamation. Upon some clerks and other employees being of certain age, it is also believed within the post office location that they may not be able to communicate at a proficient level that the job may demand, although legally they cannot be removed in which I the Plaintiff do not argue. Psychologically then unto their perception, that a demanded work may cause a frustration or proficiency level deterioration where the certain behavior may inflict an employee's duty. When there is a customer complaint to the clerk, the clerk has to deal with a customer complaint and unfortunately some customers can be overwhelming as also, some customers who do not and have not ever worked for the post office, find it hard or difficult to understand what the post office actually is initially. Although there be mistakes, workplace defamation will take place when the clerks and

management do not respectively keep the mistake between the Plaintiff and them, "will then go around talking about the mistakes to other employees" as well as somehow the specific employees know everything almost every single time and will go around using the mistake as a scapegoat to defend themselves from their own personal battles at the workplace. As well as management who will assassinate the Plaintiff with the mistake, especially if they are in a situation to have to. And as not to be bias but the Plaintiff is also less than half of the age as more than several of the employees.

- Any mistake at the Post Office is supposed to be handled between the clerk, the post master, and the union with the employee, only. The other employees are not supposed to be involved in any PDI or mistake and use the mistake to their own advantages and speak about it around with anyone else. "This is in violation of security standard".

(13) There was a former employee who was included in a previous drama, where the other employees worked together in the same fashion to exacerbate his well-being all because some of the other employees just simply did not like him because he would refuse to help, and told the other employees to mind their business. Where apparently one of the women in the office known for expressing extreme amounts of immaturity despite her age, and dislike towards males, accused him of threatening her outside of the post office without any proof just because she wanted him removed due to her own personal perception on how she thinks she hates men which she has openly expressed. Only until that former male employee expressed an anger from the buildup of stress, was he then let go for not being able to control himself on that last specific day he was in the office. Although, he was allowed back into the office from a previous threat assessment. In which management at the time was not at all professional enough to handle this situation allowed for the employee to be wrongfully removed. Again, also part of the documented "Modus Operandi Pattern".

- Not a single other office in the state of New Hampshire has this type of on-going defamation cycle. Especially under documentation.

(14) The employees have engaged in a clear Modus Operandi Pattern (MO) which can be proven because all of their actions for five years in a row have been documented by the post office's union and the post office when enduring multiple "workplace climate investigations".

- A Modus Operandi Pattern is known in criminal intent where a person or group of people cause a Pattern in their actions where their intent is so continuous in the same actions that it is obvious they have worked together to cause an action. Where detectives can easily find a perpetrator.

- The employees of this office have used the Plaintiff's protected element in a narcissistic action to defame the Plaintiff while they were under a climate investigation where they used the protected element to basically escape elements of the investigation desperately.

(15) In the probability, over time, handfuls of the Plaintiff's customers have left "regular complaints" known to the post office as "regular complaints" expressing mis delivered packages or wrong types of mail or missing mail. It is common to have these complaints at the Post Office even if they are on-going, but these complaints are being used to Character Assassinate the Plaintiff and exaggerate the Plaintiff's work ethic. Although the post office does not allow for customer complaints of regularity to obscure against the post office or its employees itself, the Plaintiff is being held accountable for in-unapparent complaints. Also, in which, when a complaint if made, it should only be discussed between the carrier and the post master and or in communication with the clerks of the offices where the Union Representation becomes involved. Although the complaints or accidents are discussed with the whole office itself including the morning janitor. Causing the workplace

defamation and other harassment where the employees now created the joke that the "Plaintiff is known for not being able to perform his own duty" despite knowingly being involved in workplace mischief. The Plaintiff now known as the worker who cannot perform his own duty, is scapegoated and used as a scapegoat when another employee is or could be in trouble for a miss delivery or lost mail or complaint situation.

(16) Upon the assassination of the Plaintiff's work ethic, the employees in the post office exchange conversation about the Plaintiff and his supposed poor work ethic. The Plaintiff being a target multiple times and scapegoated although, some employees engage verbally in other arguments where there are false accusations against each other. Few times some employees have had "physical interference" and also on separate occasions call the police when the police are not needed. The same employee in particular called the police on another employee when he told her to go fuck herself enduring a situation she began against him. Employees are demanding of instigation when instigation is not needed, and they themselves instigate. Other threat assessments and investigations have been done in the Stratham, New Hampshire post office that deem useless and have only caused mental and or psychological stress. Due to different stresses have now caused the Plaintiff different physical requirements in order to perform the Plaintiff's own position as well as other routes he need not accompany. Mentally the Plaintiff must prepare each morning before work to be able to be on the lookout, in case any continuous drama need be deflected.

(17) On another occasion a previous employee who is now retired approached the Plaintiff and accused the Plaintiff wrongly about speaking about her behind her back in which she also Retaliated multiple times in different ways because she did not trust the other specific employees of that time, some of which who still work in the Stratham, New Hampshire post office. The drama from this individual was adherent because the employees would all go out to drink together, before the Plaintiff even started working there engaging in an immature Conflict of Interest and Guilty by Association.

(18) The employees, including previous management, and other, have expressed simultaneous jealousy due to the Plaintiff being of certain younger age than others and receiving a career position earlier in life in which other employees feel it is ok to enact an engagement to express that it is ok, or should be ok that the Plaintiff do other and extra work than is needed. Several of the employees engage in on the work harassment, disorder, and drama to one another, bring forth the drama to the Plaintiff who continuously minds his own business. And it will be expressed that because they are older, that the Plaintiff is some type of "pussy" who is younger and still can't perform the job better than they can.

- The Post Office has a strict policy against age discrimination.

(19) In the act of other discrimination, it was said upon that the Plaintiff talks himself, in which no one has ever found a law or rule upon the United States that an individual could be or should be fired for talking to himself. The Plaintiff has never been proven a party of any type of psychological threat at any previous workplace nor is there a stated fact in Plaintiff's history that the Plaintiff suffers from any psychological or mental malfunction. Where it was included, without an interview to the Plaintiff, by the threat assessment team or the supposed post office nurse. With out any evidence or proof other than false witness testimony, where there was no recording or microphone recording and in which Plaintiff does not give permission to record. Plaintiff does not give permission for the post office to record by video or microphone by state laws of the state of New Hampshire and under the Post Office's own federal regulation. It is considered an offense to record anyone in the state of New Hampshire with-out permission or acknowledgment including, it is an offense at the Post Office to record or videotape any individual person while on federal post office property. I consistently asked for permission to wear a body camera to protect myself from the on-going harassment but I was denied and told any type of recording was considered not legal to post office standards. Although, someone may have been recording me in any situation to their own extent.

- There needs to be some form of permission from the Office of Inspector General of the Post Office, which there is not.

(20) With out interview or proper investigation, in the use of using paperwork merely written in the act of its exacerbation to self-claim for the post office's defense against the Plaintiff, the threat assessment team and the post office nurse without proper investigation or interview on the Plaintiff's behalf, promoted that the Plaintiff be a threat or psychological threat in which was used to wrongfully attempt to terminate the Plaintiff, was used and with out to consider the well-being and or mental well-being of the Plaintiff, as a government agency did not offer to the Plaintiff to be recognized "Welfare Benefits", or "Supplemental Security Income", in the fact that the post office, its employees, its management and its management's management that did not work in, or work long enough in the office with the Plaintiff, threat assessment team who never interviewed the Plaintiff, and post office nurse who never interviewed the Plaintiff posed the Plaintiff a threat and by phycological reason in the furthering of workplace defamation and professional negligence and wrongful termination of the Plaintiff from his career position that the Plaintiff had worked for, for up to over 6 years.

- The Union and Management eventually Expunged these allegations against the Plaintiff as Basic Acknowledgement that they could not prove so. And after questioning some employees basically stated the situation was being manipulated by specific employees.

(21) And although management did invite or ask the Plaintiff to speak with the post office therapist help, the post office therapist help is inefficient and was only regarded to the Plaintiff during the trial of being used as a "defamation of character". In which if the Plaintiff did seek post office therapist (EAP) the information given to the post office help/therapist would only be used as another assassination attempt somewhere further down the line by stating I had to actually see a therapist.

(22) Plaintiff leaves his government post office scan badge in his designated route of route 3 inside of the office, where multiple employees scanned his badge to play off like multiple mis deliveries were created by the Plaintiff, using the post office scanner to sign into the Plaintiffs account. The post office scanner never not once asks for a password per route or employee to sign in. Scanner allows only for an employee to scan badge, and once information is placed in the [scanners] itself the scanner allows for anyone to merely click the buttons to progress to the final sign in page. In the office multiple employees can sign into multiple scanners and not their own designated scanner, and even then, can use another employee's government badge to sign in or unfortunately the account itself once it is set into the scanner, and if another employee were to grab your badge or get to your badge, they could sign in to your scan account with-in the scanner without a designated scan number or determination with-in its system. Where multiple employees have used the Plaintiff's badge and gotten away with it with-out detection. Also, there be no cameras inside of the government property itself, the employees go undetected on government property.

(23) Amongst other issues, Plaintiff has filed his address change more than once where mail, especially important mail is still going to two previous addresses in Salem, New Hampshire. Where Plaintiff lives, is in Newmarket, New Hampshire for over three years now. Important mail is being lost, or brought to the wrong address in which is not being forwarded. For a third time, the Plaintiff changed the mailing address to his residency in Newmarket, New Hampshire. Amongst that, the USPS is not providing by mail Plaintiff's tax information. Although Plaintiff can get his tax information in the Liteblue website or was previously able to get his tax information. The USPS has done nothing to resolve their own employees' address information causing the Plaintiff another form of stress in which the Plaintiff did not even receive the same post office nurse's letter where it is supposed to be actuated the exact address of the Plaintiff at 9 River Street APT. D37 Newmarket, New Hampshire, where the letter was sent to a previous address, causing the Plaintiff to miss more days out of work on emergency leave with no pay, than could have

been suited. Plaintiff has not seen one tax letter in three years in a row be delivered to his proper address.

(24) In the fact that the USPS protect itself from a claim of liability, the question arises that also why would the Plaintiff have to suffer a disciplinary or multiple disciplinary acts in which Plaintiff must call his union rep to represent him during the PDI (Pre-Disciplinary Interview) for in which multiple residents/customers have made complaint of the same insinuation. That being said, during the PDI's more than one Officer in Charge has used different excuses to claim against the Plaintiff a series of faulty. Example: One morning the Plaintiff came in to work about fourteen minutes late because of a situation at Dunkin Donuts where the Dunkin Donuts worker was busy and the Plaintiff had to wait for his morning coffee. Showing up late the Officer in Charge at that time became upset that the Plaintiff stopped for coffee and showed up fourteen minutes late. The Officer in Charge then began to promote to Plaintiff that he will be receiving a PDI for showing up late. Although the union rep was informed, the idea of a PDI because of showing up late over a Dunkin Donuts coffee was extraordinarily frivolous, embarrassed by the attempted PDI complaint against the Plaintiff, the Officer in Charge began to throw "logs into the fire" a series of unrelated situations regarding frivolous situations in order to assassinate the Plaintiff and his work ethic. In this example, many times over the course of four years in a row, multiple frivolous accusations led those that were in the position of Officer in Charge, to exacerbate other occurrences in the attempt of the assassination of the situation to discipline the Plaintiff. Multiple Officers in Charge over the course of four years have tried to exacerbate many situations on their own behalf of leadership outlook. Which then that is, therefore there is a lack of teaching method unto the notation that the post office itself has to offer for some management type positions.

(25) Only the government and the post office made itself an independent government agency and set deal with the executive branch of the government to set itself free of liability and claim unto from that of which higher management, representatives, and

its master general, including the United States government itself, exacerbating its independency, could evade a litigation.

(26) Multiple times, and for multiple other employees, the customers on the routes have approached the government usps vehicle and the employees including the Plaintiff about the usps mishaps and etc. And in which threatened the employees on different occasions including the clerks, about mail or packages that cannot be explained. In which many residents have tried to make verbal complaints, email complaints, and confrontations and on government property and complaints about criteria that cannot be met leaving the post office continuously misunderstood.

(27) Multiple times the Plaintiff asked to be referenced to higher management where other employees who have a lack of credibility or ability of being able to extinguish a role to be employed as a higher management were granted to its recommendation, that they be allowed to learn the position of a higher level, where the Plaintiff was continuously disregarded. In which other employees express that the Plaintiff may be too stupid to be able to be recommended. Where they would say things like "you can't even do your job right why would you take a higher position". Or for some employees expressed that "management is so stupid you would be better at the position".

(28) Pre-Disciplinary Interviews don't make any sense unless someone is a continuous drunkard. Pre-Disciplinary Interview's cause stress when even though seeing that most of the mistakes made at the post office are made as a "regularity". Although we can see the use of a Pre-Disciplinary Interview, it being a government associated offices, used as a fear tactic to understand the probabilities, ethic, and standard set into the post office's structure and standard. Most of the Plaintiff's Pre-Disciplinary Interviews although were frivolous and time wasted but allow for management to express the character assassination of the Plaintiff.

(29) Although this one particular employee has ongoing dramatic battles, management somehow signed off on an emergency leave with no pay status against the Plaintiff as a [disciplinary act]. In which Management lied and said that the Plaintiff will be able to return the following Monday enduring this situation, the Plaintiff went to work that following Monday, but then was told to leave by management because apparently then now the Plaintiff should go back home to simply "get rest". As the Plaintiff waited for over a week, management told the Plaintiff that he will receive a type of document from the Post Office Nurse. The letter did not come to my address because the Post Office sent it to my old address and I was Prejudiced to have to wait an extension of time. When I received the letter finally, I was placed suddenly on the "emergency leave with no pay status". In which several days passed by and I, as the Plaintiff, was not warned about the emergency leave with no pay status until the following week later.

(30) Under multiple threat assessments and investigations that did not include the Plaintiff and the one that did include the Plaintiff, many employees lied in order to evade the problematic of anxiety and fear thereof and unto destroying others in defaming them from their federal job position.

(31) Just recently upon returning to the workplace, the same specific employees who engages in multiple aptitudes of drama, violence, narcissism, verbal, and physical altercations, go against post office standards and purposely call out of work or do not show up to work, in order to misconstrue the Plaintiff's character, reputation, and good name against the Plaintiff. In which they have also done at this location more than several times to several other employees including themselves, they have been documented in a "Course of Conduct" that proves Proof of their on-going harassment. Still proving a "Modus Operandi Pattern".

(32) A "false stalking order" was placed on the Plaintiff by an employee as a Character Assassination motive to destroy the Plaintiff's good reputation at the workplace.

False Pretense and several False Statements of "Conclusory Allegations" were made in order to obtain the False Restraining Order which included Slander upon the written document. While also, other Slander be documented upon the computer and written in the office that the employees use to harm and damage the Plaintiff. Apparently in which, "management encouraged the employee to get a restraining order and falsify pretense where the employee also stated the Plaintiff continues to drive by her home, in which the Plaintiff has no idea where she lives". Although, management continues to deny this.

The Plaintiff of this case Nicholas Varga, had to supply to the small claims court the documents that were being used to defame the Plaintiff, and the small claims court erred by using the Plaintiff's own defense. The documents were supplied to the Post Office Labor Relations Specialist of the Executive Branch, and the documents deemed to be significant for the Plaintiff that the Plaintiff did not commit any actions that supplies a defense for the Defendants. In plain sight known as a Prima Facie showing of results. In the Face, that the Plaintiff of this case by Basic Acknowledgment was innocent and the results beware that the Defendants have a Scheme they're entitling.

The small claims court continues to cause the erred mistake that the Plaintiff of this cause should be held accountable to the false stalking order. The small claims court also did not give the Plaintiff of this case the right to a hearing for the apparent Extension to second whole year of another over fifty thousand dollars ($50,000) in total of damages over a hundred thousand dollars. Even though the Labor Relation Specialist provides documentation that is in the Face. The next erred mistake that the small claims court made was when the Plaintiff of this case stated that there was a Climate Investigation being done, and that documentation proves that the stalking order case is subject to termination. Where the small claims court did not wait for the reflection of an Investigation. Prejudicing the Plaintiff of this case in the knowing that the results prove the Plaintiff is innocent.

(33) Upon these situations, the therapist that the plaintiff had to pay for, wrote that the Plaintiff is not a threat, is in fact competent, has not harmed himself, does not want to harm himself or others, has not in fact harmed others, exemplified that the Plaintiff does not need medication or is not taking any medication, nor does the Plaintiff need to be medicated, and then in which the post office nurse passed the Plaintiff to return to work because he was safe, and safe enough to do so. The initial issue was a false issue which the workplace was not only exemplified by the police there was no cause of action to need to be taken, but also the workplace makes the "Basic Acknowledgment" that there was no danger to any of the employees or the post office. But the employees and its management decided to continue to defame the Plaintiff in order to cause an attempt to Wrongfully Terminate the Plaintiff. They literally believe it is funny.

- Including the supervisor at the office where the Plaintiff is stuck performing federal duty illogically on special pay, [Concatenated] the use of the Plaintiff's defamation abuse by using the situation to their advantage to keep the Plaintiff on Special Pay Status because they are Desperate for help in the other office. I told my Union rep of this by email, and apparently there was a secretive conversation between these supervisors, and the Post Office Operation Manager, and the Post Master, at the new office in Portsmouth New Hampshire where they apparently have nothing in writing keeping this situation illegally in verbal communication. There are Witnesses from the office that concur to the possibility. "The Plaintiff is afraid of a specific defendant spreading false allegations against the Plaintiff so the Plaintiff should be kept on Special Pay Status". Advancing the situation in desperate need to keep the Plaintiff in the wrong office to keep the Plaintiff Prejudiced. Where these individuals also stated that I was even lucky enough they place me on their schedule, basically ridiculing me in the same. When I reported this to my Union Rep, the Post Office Operation Manager specifically told

the supervisor to "stop engaging in communication about my Defamed situation".

(34) The Plaintiff had filed by "process server" a Federal Warning Complaint to the headquarters of the United States Post Office. Therefore, "Litigation Hold" exists. Any party of the current Defendants that has caused any act of Spoilation will suffer automatic "Default Judgment" towards the relief being sought. Spoilation in this case is defined as any documentation, written or verbal that is or was deleted, or destroyed or expunged. Any miscommunication of Electronically Stored Information and any employee's documented post office criteria. In the event that anyone regularly expires documented criteria or information, Spoilation exists by a matter of law under Litigation Hold and the United States Post Office and its employees will suffer Default Judgment made.

(35) Currently, the post office and its union have the Plaintiff wrongfully on a "special pay status" where the defendants believe that the special pay status will bump the Plaintiff over where they believe it fixes the problem. But the problem here is, the Plaintiff owns a contract stating that he owns the route in the office. Defiling his career position for over one whole year.

Upon defamation and dozens of erred mistakes in the Portsmouth, New Hampshire small claims court during the hearing, the Plaintiff filed a feasible and lawful Movant against Judge Pendleton's decision to allow such individual to acquire an extension. Timely dated, under the "Mailbox Rules" of the court. And Judge Pendleton did not allow for a fair trial to discuss the individuals reason for extension when it is proven that the individual was getting her stalking order in order to have a workplace control and competition motive, prejudicing the Plaintiff of this case. The small claim court did not wait for the Workplace Investigation and decided to prejudice the Plaintiff despite. The Plaintiff contends that the state of New Hampshire must now pay the Plaintiff the logical amount to the extent of how long the court has granted the order to take place, which causes unfair treatment of

Controlling the Plaintiff from the workplace. If the Plaintiff makes way more than roughly $68,000 a year on his "evaluation", then the court should pay the Plaintiff Relief of more than $68,000 per year. And since the wrongful extension was granted that is two years of Relief to the Plaintiff.

(36) This lawsuit is as simple as understanding that the employees recklessly engaged in the defamation of the Plaintiff's career position and good name when they used a police report that the Plaintiff himself made in their advantage to state that the Plaintiff had medical issues that conducted around several Conclusory Allegations with absolutely no proof and then each provided a Witness Inconsistency. The Plaintiff received a threat from an aggressor outside of the workplace on his day off, where the Plaintiff filed a police report against the unknown aggressor where the police report became a "protected element" with the police. Although, the police stated that the threat was a fake "online scam". The Plaintiff spoke openly about the online scam threat and the employees began using the online scam threat which became a "protected element" with police, against the Plaintiff filing all sorts of actions with it against the Plaintiff. Even though the police told the defendants several times that the threat was an online scam thing.

(37) The problem with this is, the police simply said about several times to the whole entire office of employees and management that the threat the Plaintiff received was a fake online scam. Management continued to neglect this factor and placed the Plaintiff illogically on "Emergency Leave with No Pay Status" weirdly submitting that the Plaintiff was unfit to be at the workplace. When the Plaintiff returned from No Pay Status, the employees worked together to file for a "false stalking order" making dozens of false accusations (Conclusory Allegations) in order to have the false order. The Plaintiff was then removed illegally from the federal property even though it was well over a whole month later when the Plaintiff returned to find dozens of Conclusory Allegations with no proof or documentation that provides the Plaintiff has done anything.

(38) Despite the fact the police continued to state that the "protected element" was under control. Witness Testimony can be subpoenaed by police from Newmarket, New Hampshire including the police report itself. The small claims court erred a fourth time when they did not address the police report.

**PARTIES**

Plaintiff Nicholas Gerard Varga is an individual who resides in Newmarket, New Hampshire 03857. Plaintiff's current address is 9 River Street APT. D37. Plaintiff is a citizen of the United States of America. Plaintiff is an employee of the United States Post Office.

On information and belief, the United States Post Office is an independent agency in the United States of America in the Executive Branch of the government. Headquarters located at: 475 L'Enfant Plaza SW, Washington, DC 20260. And, U.S. Postal Service's General Counsel at the National Tort Center in St. Louis, MO.

A copy sent to U.S. Attorney's office in New Hampshire located at 55 Pleasant St. # 352, Concord, New Hampshire 03301.

AND

Employees engaged against the Plaintiff at the Stratham; New Hampshire post office now located at 345 Heritage Ave Unit 100, Portsmouth New Hampshire 03801. Or wherever their home address could be.

Witnesses: Stratham, New Hampshire Police and Newmarket, New Hampshire Police where the "protected element" was filed and reported. And any and other employees who are willing to give a true witness testimony of the facts.

**JURISDICTION**

Jurisdiction is proper in the state of New Hampshire. All employees (Defendants) and witnesses live and reside and work in the state of New Hampshire. The United States Post Office owns a post office in almost every single town in the state of New Hampshire sufficing minimum contacts to the state for the state to exercise jurisdiction causing "General Personal Jurisdiction".

**Memorandum of Case Law examples:**

*Zerner v. Essex County*: An employee was awarded over $2 million when the employee was subject to a false police report by the employer where the jury found both malicious prosecution and defamation was used against the employee. As in this case, the post office allowed the Plaintiff to be illegally removed from federal duty knowingly, by false stalking order petition and several Conclusory Allegations remarked at the Plaintiff where the employees and its management and union allowed a malicious prosecution attempt. Where the Post Office then had to have the allegations Expunged because the accusations against the Plaintiff were found as "Basic Acknowledgement" that there was no threat that the Plaintiff presided. Although not being presided, the Plaintiff is allowed back to his career position but is being kept from being able to obtain to service the contract, becoming prejudiced. The Union itself made a basic acknowledgement that the Plaintiff is prejudiced because the defamation is keeping the Plaintiff from his federal contract career position. The argument raises that, the contract to the ownership of Route 3 in Stratham, New Hampshire points that Route 3 should be moved back to the old Stratham, New Hampshire facility as Route 3 sits in the new facility at Portsmouth, New Hampshire. Although, this grievance cannot stay maintained because only the PO BOX sections remain in the old facility, and the new facility is periportally in construction to move these PO BOX sections into the new facility in Portsmouth, New Hampshire.

The next problem presiding in the Plaintiff's situation is that several towns including the Plaintiff's own home town have moved to the new Portsmouth, New Hampshire facility. In this context, the defamation that arose keeps the Plaintiff from being able to go to the Portsmouth, New Hampshire facility to work in any of the several towns where the Plaintiff could travel being in the hometown of Newmarket, New Hampshire, the Newmarket, New Hampshire Post Office facility has moved to the Portsmouth, New Hampshire location. The Post Office cannot legally reference me to move hundreds of miles to a whole a new town or to drop my career position down to a PTF Position just to satisfy a mentally unstable employee that her own actions erupt that I cannot work for at least six other towns apparently although I only live 10 miles from the new Portsmouth, New Hampshire facility. I am not even getting paid for mileage while on special pay status that includes mileage for over one whole year resulting in $5,000. I also used my POV and did not get paid Mileage, while also not getting paid overtime for working over 60 hours a week for over a whole year in a row.

*Shammas Law*: an employer or employee can not Retaliate against another employee for filing a police report. The Plaintiff of this case filed a police report for harassment and several employees helped in the act of filing a false stalking order to <u>Retaliate</u> to have the Plaintiff illegally taken off of federal property.

*Kelly Warner Law*: An employee can sue an employer for defamation even if the employer provided a job reference: Such as in this case, the employer believes they have poked a hole around the defamation issue by placing the Plaintiff on a "Special Pay Status" to alleviate itself from the issue which falls under "Basic Acknowledgement". Also, asserting to the Plaintiff to just go "bid on a new route". Which is not comprehensible, or saying "there are plenty other career positions" which is also not comprehensible to the post office nor the Plaintiff. This is false direction because an employee may have to wait several years before they win any "bid" to own a new route or to transfer their contract. I filed paperwork

that states: I earned the Permanent Right to work as an employee where that it states I own route 3 in the town of Stratham, New Hampshire and I do not have to bid on a new route just to "satisfy" the issue. Especially when "Basic Acknowledgment" is made. And mostly because Defamation is the erred issue at stake. The problem here is, waiting this long on special pay while knowing that if the Post Office cannot provide as many hours as needed, the Plaintiff becomes Prejudiced. A next Prejudiced issue is, the Plaintiff working as many hours on special pay status as needed to suffice.

As in *John Sherman Law Case*: Involves an employee who was retaliated against after reporting sexual harassment by her manager. The employer responded by reducing her work hours, changing her shifts, and issuing a written discipline. As in this case, the Plaintiff was removed illegally by false stalking order because the Plaintiff made a police report of the harassment by employees and management after being falsely placed on "emergency leave with no pay status" after the employees engaged in more than just a "course of conduct" with one another and using the Plaintiff's "protected element" with police who already told them beforehand there was no cause of concern for safety. Placing the Plaintiff illogically on Special Pay Status, the Plaintiff may only have hours "if" there are offices that are able to "offer" hours. In certain days supervisors who have not caught the flow of the workplace vibes, have sent the Plaintiff home Prejudicing the Plaintiff from some wages.

- I received PDI's for not helping do extra work, while the reasons for the PDI's were made up miscellaneous reasons "of regularity" even.

*University of Texas Southwestern Medical Center v. Nassar:* Requires an employee to prove Retaliation was the decisive cause of the employee or employer's action. As in this case, the Plaintiff made comments to the Defendants about his "Police Report". Then, together they removed the Plaintiff from the workplace by placing the Plaintiff unlawfully

and with-out protocol on "emergency leave with no pay status" attempting to Wrongfully Terminate the Plaintiff from his "contract career position". Once again, the Police, said the thing was an "internet scam". The Plaintiff then, because of being placed on the "emergency leave with no pay status" without Protocol, then made a Police Report of the "Harassment" at the Stratham, New Hampshire police station, and the police officer spoke with two specific employees. On the Plaintiff's return, the employees worked together in the "Modus Operandi Pattern" to subdue a False Stalking Order to have the Plaintiff removed from federal duty and federal property.

The Plaintiff's "Protected Element" as mentioned earlier, even though the police already told them all, that there was no cause of safety concern and that the threat the Plaintiff received was an "online scam". Basically by "Basic Acknowledgment" attempting a Defamation scandal in the open using an improper tactic. Management at this time, not only had conflicting battles with the employees but also had a Conflict of Interest and was "Guilty by Association" with the specific employee who is using the False Stalking Order to harm the Plaintiff, placing the Plaintiff in harm's way and a yearlong worth of damages. Management signed a document that entitled the office to place the Plaintiff on the Emergency Leave with No Pay Status but was not a witness to the workplace events. Because management was never in the office for long periods of time.

In this case, Federal Management and a Federal Employee with specific employees also engage in off of the workplace activities where they admitted they did cause a "guilty by association".

- The online scam started getting used against the Plaintiff by the small claims court, even though the Post Office blatantly admits the settlement defeat as attached to this Complaint as Exhibit #. The small claims court continues to allow the Prejudice. Where the Post Office reflected the Expungement based

on "Basic Acknowledgement". The Labor Relations Specialist of the Executive Branch of the Post Office said the issue was not a threat. Although the employees continued to engage in defaming the Plaintiff out of the workplace with it.

"Defamation Per Se" is described as False Statements that were so harmful that damages are presumed, and a Plaintiff does not have to prove specific financial loss to bring a lawsuit. These statements are considered damaging on their Face, and fall into the categories of falsely claiming the Plaintiff of this case has or will be committing a crime, or that the Plaintiff is, or should be, considered too unfit for the career position in which the Plaintiff owns a permanent right by law. This has caused embarrassment and had led to other forms of abuses and defamation including damaging the Plaintiff's reputation. Reputation is also damaged because the Plaintiff cannot enter the new facility in Portsmouth, New Hampshire after the Stratham, New Hampshire location has transferred. Causing other employees and management to question why the Plaintiff is not secure in this specific office but is secure in the other offices, while illogically on Special Pay Status.

Witness testimony from employees of the Stratham, New Hampshire office, against the Plaintiff, is not enough due to "Guilty by Association" where all employees have admitted as Federal Employees, they hang out together getting drunk. And that it being a Defamation Scandal between employees, and there being no real physical evidence they can conclude against the Plaintiff himself, the court is not obligated to rely on a defendant's "Conclusory Allegations" being made against a Plaintiff.

- Negligent Retention: Negligent Retention is when an employer can be sued because the employee who filed a false stalking order is a direct threat to the Plaintiff at the workplace threating the safety of my career. Where the employer, union, management, and other employees know about it and have not at all acted at all to

Prevent it. The current employee who has a false stalking order on me to gain workplace control has a history of abuse issues and was documented by the state as a Vexatious Litigation Offender of some sorts. And I have suffered for over a year of damages while the employee thinks it's funny and no one does anything about it as I remain defamed. They made simple Admittance that they know the person is Manipulating for the stalking order. This employee specifically has been documented dozens of times for harassment at the workplace for physical and verbal altercations. Whereas the Post Office is now liable for Vicarious Liability.

- The Post Office is protected by a Sovereign Immunity but only from allegations that arise from outside of the employees' offices when the allegations are made by residents outside of the offices. The Post Office is not broadly immune from all forms of Negligent Retention such as in this case. This case is about an employee from the inside causing continuous issues and defamation to another employee with "basic acknowledgement". Outside complaints from residents or customers are highly disregarded because the way the Post Office has to function in general, we are not held to litigation for mis-delivery or other certain issues or complaints.

The post office under the Executive Branch pertains its own set of standards whereas they do not facilitate to the "fire-able state" that New Hampshire is. As well as, this does not apply because I own a "federal contract" upon the route I own. "I also have a union". Which determines I do not fall under Fire-Able probability in the state of New Hampshire.

- The Post Office currently has me "under the radar" on a Special Pay Status instead of working correctly with the USPSIS or the "Office of Inspector General" that is supposed to handle stalking and restraining orders. Although, I am being told that such orders do not apply but yet I still cannot go back to my own career contract

position and I have suffered over a year of damages. I have contacted the Office of Inspector General stating specific facts and they have not responded.

Since this court has General Personal Jurisdiction over the Post Office in this state of New Hampshire, a Discovery Phase can easily assist the documented documentation of all incidents and complaints that proves both harassment issues and the Modus Operandi Pattern that involves the employees and Post Office (Defendants) and other employees involved. If the Post Office cannot provide this information for the Plaintiff when enduring Discovery, this means the individuals with-in the Post Office have caused "Spoilation". A Warning Complaint was served on all parties at the Post Office including the Headquarters of the Post Office in October of 2024 and where there was a False Stalking Order in place, there is a foreseeable litigation where all parties involved openly knew the individual and individuals involved were engaged in such incident, meaning that "Litigation Hold" remained valuable. Spoilation of Evidence causes Default Judgment under Federal Rulers of Civil Procedure 37(e) in favor of the Plaintiff where the Post Office and its employees involved have to pay the relief and submit to Default Judgment.

Process Server served the documents and I have provided the Affidavit of Service as Exhibit #2 in regards that Labor Relations of the Post Office and the Plaintiff's own Union, cannot provide all of the information requested during Discovery Phase where there were several Harassment Investigations between employees where they even documented themselves enduring the weird defamation snippet battles of workplace complaints and violences.

- This issue has been under "Litigation Hold" since September of 2024. If any electronically filed information, written information, or other communication was erased, destroyed, or even just merely Expunged, the Federal Court of the state of New Hampshire is entitled to Default Judgment against the Defendant in favor of

the Plaintiff due to Spoilation of Evidence under the Rules of Evidence for the below following Relief of the Plaintiff's career position.

Documentation needed from Discovery begins before the year of 2019. Labor Relations is supposed to hold documentation for up to 10 years. Especially when the documentation is Climate Investigations or Workplace Investigation related. There were several workplace investigations since the Plaintiff began working in the Stratham, New Hampshire post office dating back towards the year of 2019. Any erased or destroyed documentation is considered Spoilation and the Post Office and its Union shall submit to Default Judgment rewarding the Plaintiff the below Relief being sought.

- Thus, documentation obviously proves on-going harassment problems in this office between all employees and its union such as in *Rasmy v. Marriot Int'l Inc*. Where this litigation is not exactly about discrimination but a History and Pattern of Harassment. Which included False Workplace Complaints filed against the Plaintiff. This case helps establish that all conduct, even if not overtly based on a protected class, can be considered as part of a hostile workplace environment claim. As in this case, the documentation proves a "Course of Conduct" implemented by these employees and the actions taken that has left the Plaintiff in Prejudice and Suffering.

This documentation is attached to the Plaintiff's Appendix as exhibit # 2.

A list of Basic Acknowledgement in writ from the Union, Post Office Operation Manager, supervisors, and other employees is attached in the Appendix as Exhibit section #

**Discovery Phase includes**: All Preliminary Discipline Interview information from all employees, all workplace harassment investigations, climate investigations, union

representative response information to the investigations and questioning. All complaints from the workplace, HR, OIG, and everything in documentation and recording regarding the Stratham, New Hampshire post office, the Portsmouth, New Hampshire post office dated by specific documentation of employees investigatory when requiring the Stratham, New Hampshire post office, and the Rochester, New Hampshire post office dated November 4th of the Plaintiff entrance. Documentation regarding the snippet battles between the defendant Cindy Sinton, clerks, management, union and previous post master and all Officers in Charge. There were dozens of Officers in Charge of the Stratham, New Hampshire post office because of on-going reflection of workplace control. Documentation regarding all officer's in charge. All testimony information regarding these above events from other employees. Dated 10 years prior to this litigation as Labor Relations should have kept. There were dozens of complaints between employees that were supposed to go recorded by all Officers in Charge. The Office of Inspector General's information and Recordings. Even if secretively done against the Plaintiff. 18 U.S.C. § 2511 Describes that it is unlawful to record an employee on Federal Property even if you are the Office of Inspector General in regards to the Post Office. Under (RSA 570-A:2) it is a Felony that the Office of Inspector General conducted a recording of anybody if there was no investigation against the plaintiff himself.

I request the documentation of my Retirement percentages since I have been Illogically on Special Pay Status where Special Pay Status began in September of 2024.

- After the employees worked together to file for a False Stalking Order, they found workplace control. The problem here is, the OIG (Office of Inspector General) of the Post Office did not prepare for proper investigation violating their own terms of policy against the Plaintiff. I was removed illegally from a federal duty. There is no "OIG claim" on behalf of any of these employees or the union. I was not given any information or documental of an Officer of Inspector General Claim.

It is also illegal at the Post Office for any employee to record any other employee at the Post Office without everyone's consent and I did not give consent to be recorded either orally or by wire or by phone recording of any kind. And if anyone recorded me, I press charges in my defense that they pay to Default Judgement for violating the rule. I had asked several times for permission to wear a body camera so as to protect myself enduring harassment from certain employees and was told no. All Defendants with a Recording of any sort must Respond to this lawsuit with-in specified time under Federal Rules of Civil Procedure or face Default Judgment to pay the Relief granted to the Plaintiff.

It is a Class B Felony or Misdemeanor to violate New Hampshire's wiretapping and eavesdropping statute RSA 570-A by recording a person or conversation without the consent of all parties. If such thing is apparent the recordings will be considered Not Admissible and will be considered Suppressed.

In the factor that the Post Office has a strict no recording policy and unto, the state of New Hampshire has a strict no recording policy any defendant with a recording of any sorts faces a double situation clause as a Class B Felony. Including its own business the Post office itself faces Default Judgment if it has recorded any of its employees. There is not a recording rule in place meaning the office that resides in the state of New Hampshire must submit to "Local Rules". The Post Office may only be entitled to record interviews with out an employee's consent upon an investigation. They are not allowed to record an employee for any other reason unless it was a direct interview and this case there is not a feasible recording of any entitled interview. Unless there is a timely documented Officer of Inspector General Claim in place where the OIG gave report to conduct a recording.

The Post Office's investigations with the Office of Inspector General are supposed to be for investigations into Fraud, Waste, or Abuse. Not random allegations made against an employee by an [already documented office].

Terminating or attempting to Terminate a Plaintiff for initiating a lawsuit against an employer is considered "Illegal Retaliation" under both Federal and State Laws. Provided that this lawsuit is considered a "Protected Activity". In case any individual at the Post Office attempts to terminate me in retaliation for starting a lawsuit against them including the Union itself and its specific employees and employees at the Post Office. The Post Office faces Default Judgment on the below Relief being sought upon the Plaintiff's "Federal Career Contract". And this case can only be dismissed without prejudice presiding that the Plaintiff of this case continues working at the Post Office.

The last problem upon in this Complaint is the factor that once the workplace defamation commenced, the post office was doing "Route Evaluations". Because of the commenced defamation, the route dropped from a K Route to an H Route because the Plaintiff was not able to communicate to the office in order to defend the Evaluation. So, now that the Plaintiff is placed on special pay status to abide the False Stalking Order, the Plaintiff makes less than he is supposed to an hour while on special pay status. His earnings has dropped significantly where his pay is evaluated as less, which he has been paid than less than his true earnings for over a year.

Attached to Complaint in the Appendix is a list of Witness "basic acknowledgement" that the Plaintiff has been Prejudiced.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

Plaintiff seeks relief in the form of damages concurring the logical terms of his lost career position due to the above reasons.

Awarding Plaintiff:

- A permanent restraining order against each employee involved.

Exactly one million ($1,500,000) dollars after tax, which would consider the Plaintiff thereof of exactly twenty years (20) of service if since the Plaintiff was paid fifty-thousand dollars ($50,000) a year as a career employee paid in damages by the United States Post Office or government agency that pays damages.

Exactly one million five hundred thousand ($1,500,000) dollars after taxes in the validity that the Plaintiff would reach sixty-two (62) years of age to endure final retirement, from the United States Post Office or government agency that pays damages.

In the sum of a total of three million ($3,000,000) dollars "after taxes" from the United States Post Office or government agency that pays damages. And plus, the $50,000 from each employee for the Defaming of one whole year of damages which can be paid in instalments if they need to.

The small claims court in Portsmouth must pay the damages of $50,000 per year conclusive to their erred mistake which further prejudiced and defamed the Plaintiff.

Before taxes to calculate $3,000,000 is roughly $4,934,606 in the state of New Hampshire upon federal taxes of some sorts. (Federal Contract). This is not even the entire amount the Plaintiff would make because the Federal Contract supposes a "Raise" and other benefits every certain month frame. Whereas the Federal Court could grant more.

**Double Wages calculated for the Hundreds of missed overtime pay that hast violated the Fair Labor Standards Act.**

**Payment calculated from K Route standard of the Route Agreement in K.**

More than $68,000 dollars a year for each year from the small claims court of Portsmouth, New Hampshire who prejudiced the Plaintiff to allow a False Stalking Order in the agenda of a continuance of defamation and vexatious litigation. The calculation is now going on over the period of two years of prejudice.

Awarding Plaintiff interest, including pre-judgment and post-judgment interest, on the foregoing sums by the Post Office and the specific employees.

Awarding such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED

NICHOLAS GERARD VARGA
9 River Street APT. D37
Newmarket, New Hampshire 03857
[redacted] 603-828-6197
Varganick3@gmail.com